UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEIDI GERMANOWSKI, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 15-30070-MGM |
| PATRICIA HARRIS, Individually and in her Capacity as Register of Deeds, and COMMONWEALTH OF MASSACHUSETTS | * |
| Defendants. | * |

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
(Dkt. No. 6)

February 19, 2016

MASTROIANNI, U.S.D.J.

Plaintiff Heidi Germanowski was terminated from her position as First Assistant Registrar in the Berkshire Middle District Registry of Deeds ("Registry") in February of 2015. On April 20, 2015, she filed this action against her former supervisor, Patricia Harris, individually and in her official capacity as Register of Deeds ("Harris"), and the Commonwealth of Massachusetts (collectively "Defendants") alleging her termination violated her rights under the Family Medical Leave Act of 1993, 29 U.S.C. § 2615 ("FMLA") and violated state law. Defendants moved to dismiss the two counts brought pursuant to the FMLA and requested the court decline to exercise supplemental jurisdiction over the remaining state law claims, thereby disposing of the action in its entirety. For the reasons explained below, the court grants Defendants' motion.

I.   BACKGROUND[1]

Plaintiff began working at the Registry as a recording clerk in 2002. (Compl. ¶ 6, Dkt. No. 1.) She received several promotions over the next ten years and in October of 2012 she was promoted to serve as First Assistant Register. (*Id.* at ¶¶ 6, 12.) During 2012 one of her colleagues at the Registry, Harris, then the Second Assistant Register, was running for the position of Register. (*Id.* at ¶¶ 9-10.) Plaintiff actively participated in Harris's campaign. (*Id.* at ¶ 11.) In November of 2012, Harris was elected Register and, in January of 2013, after beginning her term as Register, Harris asked Plaintiff to continue as First Assistant Register. (*Id.* at ¶¶ 14-16.) The following year, in the spring of 2014, Plaintiff began experiencing fatigue, hair loss, aches, anxiety, stress, and gastrointestinal pains. (*Id.* at ¶¶ 18-19.) She visited several physicians at that time and informed Harris about her health issues. (*Id.* at ¶ 19.)

Plaintiff continued to have medical issues and, in September of 2014, she again consulted with a physician about her symptoms, including uncontrollable crying, anxiety, weight loss, and symptoms related to stress. (*Id.* at ¶ 29.) A practitioner diagnosed Plaintiff with an anxiety disorder. (*Id.*) She told Harris about her symptoms and informed Harris that she was under a physician's care. (*Id.*) On October 2, 2014, Plaintiff had a nervous breakdown while at work. (*Id.* at ¶ 30.) A coworker took Plaintiff to Harris's office and Harris drove Plaintiff home, even though Plaintiff told Harris that she did not want to be driven home. (*Id.*) Later, Plaintiff was taken to an emergency room, where she was prescribed medicine, sent home, and instructed to contact other providers. (*Id.*) Several days later, on October 6, 2014, Plaintiff's father-in-law passed away. (*Id.* at ¶ 32.) During the time she was away from work, Plaintiff tried to contact Harris to discuss her work duties and

---

[1] As the court will decline to exercise supplemental jurisdiction over the state law claims, the court summarizes only those factual allegations relevant to Plaintiff's FMLA claims.

absence. (*Id.* at ¶¶ 32-34.) The complaint is silent as to whether any discussion resulted from Plaintiff's attempts to contact Harris.

Also in October of 2014, Plaintiff began treatment with a psychiatrist and therapist. (*Id.* at ¶ 35.) Once again, she told Harris about her symptoms and treatment. (*Id.*) Plaintiff tried to return to work on October 20, 2014, but Harris suggested she return home and rest for the remainder of the week. (*Id.* at ¶ 36.) On October 27, 2014, Plaintiff and Harris had lunch and agreed Plaintiff would return to work the following day. (*Id.* at ¶ 37.)

Several months later, on Thursday, January 29, 2015, Harris erroneously, and without basis, accused Plaintiff of having an affair. (*Id.* at ¶ 43.) That afternoon, Harris left Plaintiff a voicemail message in which she instructed Plaintiff not to come to work the following day.  (*Id.* at ¶ 44.) About three and a half hours later, Plaintiff received a second voicemail from Harris, again instructing her not to go to work the following day. (*Id.* at ¶ 45.) The following morning, Plaintiff went to the Registry building to drop off keys for a basement storage room and was denied access to the building because Harris had erroneously and without basis told one or more court officers that Plaintiff posed a threat. (*Id.* at ¶¶ 46-47.) Two days later, on Sunday, Harris sent Plaintiff a text message stating "We are going to have to talk today. I'm not going to have time Monday or Tuesday. What time will work for you?" (*Id.* at ¶ 48.) The complaint is silent as to whether Harris and Plaintiff had further communications that day.

The following day, Harris left Plaintiff two voicemails ordering her not to return to work on Tuesday February 3, 2015. (*Id.* at ¶ 49.) These messages caused Plaintiff to believe her job was in jeopardy. Plaintiff sent Harris an email the following day stating that she would be out sick for the rest of the week and was scheduled to see her doctor. (*Id.* at ¶ 50.) When Plaintiff saw her psychiatrist on February 5, 2015, she was advised to take a leave of absence from work in order to seek treatment. (*Id.* at ¶ 51.) The psychiatrist made the recommendation in a letter, but the complaint

is silent as to who received the letter and when. (*Id.*) The next day Plaintiff received a voicemail from the chief court officer informing her that her employment had been terminated and directing her to turn in her badge and keys to him by the end of the day. (*Id.* at ¶ 52.) Several minutes later, Plaintiff received a termination notice in an email from Harris. (*Id.*)

## II.   JURISDICTION

Plaintiff filed a five count complaint. Counts I and II assert claims of violation of FMLA, a federal statute.[2] Counts III, IV, and V are based on state law. This court has subject matter jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367.

## III.   LEGAL STANDARD

A party moving to dismiss an action pursuant to Rule 12(b)(6) has the burden of demonstrating that the complaint lacks "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Though "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," once a plaintiff has put forth "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

---

[2] Count I seeks compensatory damages pursuant to 29 U.S.C. § 2617(a). Count II seeks liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

relief." *Iqbal* at 679. To succeed on a motion to dismiss, the moving party must show the other party's assertions fall short of establishing at least one "element necessary to sustain recovery under some actionable legal theory." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted). "[A] complaint need not 'plead facts sufficient to establish a *prima facie* case,'" but a court can consider the elements of a *prima facie* case in order to "determine whether the 'cumulative effect of the complaint's factual allegations' is a plausible claim for relief." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 718 (1st Cir. 2014) (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)).

## IV.    DISCUSSION

A.    <u>FMLA Claims</u>

The central provision of the FMLA "guarantees eligible employees 12 weeks of leave in a 1-year period following certain events." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002). Three provisions cover events which create a need for an employee to care for family members, while the fourth provision, sometimes called the "self-care provision," applies when the employee herself is ill or injured. *Coleman v. Ct of App. of Md.*, 132 S. Ct. 1327, 1332-33 (2012) (referring to 29 U.S.C. § 2612(D) as "the self-care provision"). Plaintiff claims she sought leave to obtain care for herself pursuant to the self-care provision and was not able to obtain leave to which she was entitled under the FMLA. Though Plaintiff's complaint appears to only state an FMLA interference claim, the court understands Plaintiff to assert both that Defendants interfered with her exercise of her

right to take leave pursuant to the FMLA in February of 2015 and fired her in retaliation for her attempt to take FMLA leave in February of 2015.[3]

The court first considers Defendants' argument that Plaintiff's FMLA claims in Counts I and II made against the Commonwealth or seeking monetary damages from Harris in her official capacity should be dismissed because the Eleventh Amendment bars suits brought pursuant to the self-care provisions of the FMLA. As Plaintiff concedes, the Supreme Court has squarely addressed this question, holding "the self-care provision is not a valid abrogation of the States' immunity from suit." *Id.* at 1334. Eleventh Amendment immunity applies to states "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000) (dismissing, based on Eleventh Amendment immunity, claims for both injunctive and monetary relief brought against state agency). In addition, Eleventh Amendment immunity extends to retroactive monetary claims made against a state officer, in that officer's official capacity. *Mills v. Maine*, 118 F.3d 37, 54 (1st Cir. 1997). The court will, therefore, dismiss Plaintiff's claims against the Commonwealth and will dismiss claims seeking monetary damages from Harris, in her official capacity. Consistent with the exception to Eleventh Amendment state immunity carved out in *Ex Parte Young*, 209 U.S 123 (1908), the claims seeking prospective relief, in the form of reinstatement, from Harris in her official capacity survive the Eleventh Amendment challenge. *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 28-29 (1st Cir. 2005).

Defendants argue the remaining FMLA claims from Counts I and II – those seeking prospective, equitable relief from Harris in her official capacity and those seeking monetary damages from her in her individual capacity – should also be dismissed because the factual allegations set out

---

[3] On its face, Plaitniff's complaint only appears to assert an interference claim, but in her opposition to Defendants' motion to dismiss, Plaintiff sets forth the elements needed to state a *prima facie* case for retaliation. As "the liberal 'notice pleading' requirements of Rule 8 of the Federal Rules of Civil Procedure" do not require a plaintiff to cite the precise statutory basis for the relief, the court analyzes the adequacy of Plaintiff's pleadings as to both potential theories. *Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003).

6

in the complaint do not "state a claim to relief that is plausible on its face." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). Specifically, Defendants allege Plaintiff's complaint contains no factual allegations stating, or from which it can be inferred, that Harris knew, or even had any reason to know, that Plaintiff intended to take FMLA leave at the time she was terminated in early February of 2015.

While Plaintiff need not set forth in her complaint a detailed evidentiary proffer with respect to each element of a *prima facie* case for FMLA retaliation, on a motion to dismiss the court must determine whether "the cumulative effect of the complaint's factual allegations is a plausible claim for relief." *Carrerro-Ojeda*, 755 F.3d at 718 (internal marks and citations omitted). A *prima facie* case of FMLA retaliation has three elements: (1) the employee "availed herself of a protected FMLA right; (2) she was 'adversely affected by an employment decision;' and (3) 'there was a causal connection'" between the protected conduct and the adverse employment action. *Id.* at 719. Plaintiff has asserted that she was terminated from her position, an allegation that suffices as to the second element. However, when the court turns to the first and third elements of the *prima facie* claim, it finds Plaintiff "offers too little to connect her taking of FMLA leave and her termination to push her claim across the plausibility threshold." *Id.*

Plaintiff states that her doctor wrote a note advising she take leave, but she does not allege that Harris, or anyone else in the Registry, knew about or had received the note. Nor does she allege that she had informed anyone at the Registry that she intended to exercise her right to take FMLA leave. The absence of any factual allegations regarding her communications regarding a desire or intent to take FMLA leave has two impacts. First, there is an absence of alleged facts that would demonstrate Plaintiff had actually availed herself of a right protected by the FMLA. Second, and more critically, if no one at the registry knew of Plaintiff's intention to utilize her FMLA rights, any assertion that the

termination decision had a causal relationship with Plaintiff's right to take FMLA leave in February of 2015 becomes implausible.[4]

With respect to Plaintiff's claims that Harris interfered with her rights under the FMLA by terminating her rather than allowing her to take FMLA leave, Plaintiff need only make a plausible showing that she was entitled to the FMLA leave that was denied to her. *Id.* at 722. The difficulty facing Plaintiff is that she has not actually alleged that anyone denied her FMLA leave to which she was entitled. The chronology of events set out in her complaint is clear that she was notified of her termination prior to having any communications with Harris or any other Registry staff about her intention to take FMLA leave. Plaintiff's complaint indicates that before she informed Harris that she would be out sick during the first week of February in 2015, Harris had already told her not to come to work and Plaintiff was concerned about her job.

The FMLA is not a tool an employee can use to delay or avoid a termination that is unrelated to that employee's need to take time off pursuant to the FMLA. When an individual is terminated while taking FMLA leave, the termination only violates the FMLA if it is retaliatory. *Id.* at 722-23. As discussed above, the factual allegations set out in the complaint do not state a plausible FMLA retaliation claim because Plaintiff has failed to allege that Harris knew or had reason to know that Plaintiff intended to take FMLA leave when Plaintiff was terminated. Since the termination of an employee who is out on FMLA leave only violates the FMLA if the termination is retaliatory, a complaint does not set out a plausible claim for relief under the FMLA if it is does not allege facts from which it can be inferred that the person making the decision to terminate knew that the plaintiff intended to take FMLA leave.

---

[4] A number of the facts set out in the complaint point to other likely explanations for Plaintiff's termination, some of which are concerning, but not in connection with protections offered under the FMLA.

B.	State Law Claims

The remaining claims asserted by Plaintiff allege violations of Massachusetts law. Having dismissed Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over the remaining state-law claims asserted in Counts III, IV, and V and will therefore dismiss those counts without prejudice. *See Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327, 337 (1st Cir. 2015) (affirming district court's decision not to exercise supplemental jurisdiction over a state law claim after court had dismissed federal claims). Since the dismissal is without prejudice, Plaintiff is free to pursue her state law claims in a proper forum.

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is hereby ALLOWED. The federal claims (Counts I and II) are dismissed with prejudice for failure to state a claim. Having declined to exercise supplemental jurisdiction, the court also dismisses, without prejudice, the state claims (Counts III, IV, and V).

It is So Ordered.

  /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI
United States District Judge